IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 10-00027-01-CR-W-ODS |
| | ) | |
| MICHAEL K. SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is Defendant's Motion to Suppress Evidence. Defendant moves the Court to suppress all evidence recovered from the September 2, 2008 search of his car on grounds that Michon Starnes did not have authority to consent to a search. For the following reasons, Defendant's motion to suppress should be denied.

## *I. BACKGROUND*

On September 2, 2008, the Bank Midwest in Platte County, Missouri was robbed. Law enforcement were suspicious that Defendant's Jaguar had been involved in the robbery. FBI Special Agent Leena Ramana and two Kansas City, Missouri Police Department detectives went to Defendant's apartment, where they asked for and were given consent from Defendant's girlfriend to search the car. Law enforcement recovered, inter alia, a navy blue stocking cap that had eye holes cut out and a tan floppy hat.

An indictment was returned against Defendant on February 3, 2010. On December 14, 2010, Defendant filed a motion to suppress (Doc. No. 65). The government responded to Defendant's

1

motion on December 22, 2010 (Doc. No. 78). I conducted an evidentiary hearing on April 4, 2011. The government appeared by Assistant United States Attorneys Bruce Clark and Joseph Vanover. Defendant was present, represented by appointed counsel John Picerno. The government called FBI Special Agent Leena Ramana to testify. Defendant called Michon Starnes to testify on his behalf. The following exhibits were marked and admitted into evidence:

      Government's Exhibit 1:    Consent to Search;
      Government's Exhibit 2:    Motor Vehicle Inspection Inventory Record/FBI Receipt.

## *II. EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. On September 2, 2008, the Bank Midwest in Platte County, Missouri was robbed (Tr. at 3-4). Witnesses reported and the bank's surveillance video confirmed that the bank was robbed by three masked armed gunmen (Tr. at 4). Surveillance footage showed two of the robbers wore dark full-face coverings that had eye holes cut out (Tr. at 13, 28-29). Law enforcement had received information that a blue Kia Sport was involved (Tr. at 14).

2. While law enforcement was at Bank Midwest conducting interviews, they received information from the Platte Woods, Missouri Police Department that a lime green Jaguar sped out of a carwash on Prairie View road and was traveling at a high rate of speed and swerving (Tr. at 5). The carwash is approximately one quarter of a mile from Bank Midwest (Tr. at 5). The police officer obtained the Jaguar's full license plate number (Tr. at 5).

3. Law enforcement also received information about an abandoned car while they were still at Bank Midwest (Tr. at 5). A neighborhood canvas revealed that a black Toyota Camry was

found in the parking lot of the carwash out of which the lime green Jaguar had been seen speeding (Tr. at 5-6). The Camry was parked outside of a carwash stall; the keys were in the ignition and it was running (Tr. at 6). The Camry had been reported stolen and had stolen license plates (Tr. at 6). Law enforcement did not have any information that a black Camry had been involved in the robbery (Tr. at 15).

4. Law enforcement became suspicious that the Camry had been used during the robbery, driven to the car wash, and that the robbers switched to the Jaguar to get away (Tr. at 6).

5. Law enforcement ran the license plate of the Jaguar and determined Defendant was associated with the vehicle (Tr. at 7). A database search revealed Defendant was receiving mail at an apartment at 910 Pennsylvania in Kansas City, Missouri (Tr. at 7-8).

6. Law enforcement set up surveillance on this address and eventually saw a lime green Jaguar with the same license plate pull into the parking lot (Tr. at 8, 29). The Jaguar was being driven by Michon Starnes who had her three minor grandchildren with her (Tr. at 8). Ms. Starnes and children got out of the car and went inside the building (Tr. at 8).

7. FBI Special Agent Leena Ramana and two Kansas City, Missouri Police Department detectives knocked on the door of the apartment at which Defendant received mail and announced their presence (Tr. at 8-9). They did not have their guns drawn (Tr. at 17). Approximately four additional law enforcement officers were positioned down the hallway and did have their guns drawn (Tr. at 9, 17-18).

8. Ms. Starnes came to the door (Tr. at 9). Special Agent Ramana testified that from where Ms. Starnes stood she would not have been able to see the officers in the hallway with drawn guns (Tr. at 18).

9. Special Agent Ramana and the two detectives identified themselves and told Ms. Starnes they wanted to speak with her about the Jaguar (Tr. at 9). When asked if anyone else was there, Ms. Starnes responded only her grandchildren and gave permission to law enforcement to check the apartment (Tr. at 9).

10. Special Agent Ramana and Detective Butler continued to talk to Ms. Starnes; they did not have their guns drawn (Tr. at 9). The three children were seated at a table to their right while three or four other officers conducted a security sweep the apartment (Tr. at 10, 20). The officers conducting the sweep had their guns drawn (Tr. at 10). After the sweep was complete, the officers put their guns away and returned to the hallway (Tr. at 10, 20).

11. Ms. Starnes told Special Agent Ramana and Detective Butler that she had been in an on again, off again relationship with Defendant for some time, most recently in 2008 (Tr. at 10). She said Defendant lives at the apartment and she had last seen him that day around 6:00 a.m. when she left for work (Tr. at 10-11). Ms. Starnes explained Defendant owned the Jaguar, but that she was the primary driver since Defendant had a suspended driver's license and did not like driving the car (Tr. at 11). She said there was one set of keys to the car, which she had in her possession (Tr. at 11).

12. Ms. Starnes further stated she worked at Sutherlin's Optical, which is within walking distance of the apartment, and that she had walked to work that day (Tr. at 23). Defendant dropped off the key to Ms. Starnes at work that afternoon so she would not have to walk home in the rain (Tr. at 35, 46).

13. Special Agent Ramana asked Ms. Starnes if she would allow law enforcement to search the Jaguar (Tr. at 11). Ms. Starnes agreed (Tr. at 11).

14. Special Agent Ramana, Detective Butler, Detective Bailey, Detective Sola, Ms. Starnes and one of the children took the elevator down to the parking lot where the Jaguar was parked (Tr. at 11, 21-22, 30). Officers stayed in the apartment with the other two children (Tr. at 30).

15. Special Agent Ramana read Ms. Starnes a written consent to search form (Tr. at 11). Ms. Starnes again agreed to allow law enforcement to search the vehicle, signed the consent form and gave them a key (Tr. at 11, 30).

16. The consent form contains language advising of the right to refuse consent (Tr. at 12; Gvt. Exh. 1). It also contains the statement, "I give this permission voluntarily." (Tr. at 12; Gvt. Exh. 1).

17. Special Agent Ramana testified she did not threaten or force Ms. Starnes to sign the consent form or to give verbal consent (Tr. at 12).

18. Standing outside the Jaguar, Special Agent Ramana looked in the back passenger's side window and could see a dark-colored head covering on the floorboard (Tr. at 12).

19. Law enforcement then searched the Jaguar (Tr. at 13). They found a navy blue NASCAR stocking cap with eye holes cut out of it on the passenger's side floorboard (Tr. at 13; Gvt. Exh. 2). Within this hat was a tan floppy hat (Tr. at 13; Gvt. Exh. 2). Law enforcement also recovered four FAC filters, bolt cutters, finance documents, a mirror and a CD disk cartridge with six CDs (Gvt. Exh. 2).

20. Ms. Starnes testified that when she opened the apartment door to law enforcement on September 2, 2008, she saw ten to fifteen police officers in the hallway (Tr. at 40). She was frightened by the officers having their guns drawn (Tr. at 40).

21. Ms. Starnes testified one of the officers asked if they could look in the Jaguar, to which she replied "yes" (Tr. at 43). She later testified that when asked if law enforcement could look in the Jaguar she told them it was not her car (Tr. at 43, 45). She stated law enforcement told her it was okay so she agreed (Tr. at 43, 45).

22. Ms. Starnes testified she went to the parking lot with the officers and opened the Jaguar's door and trunk (Tr. at 42). She stated law enforcement then asked her to sign a consent form (Tr. at 44).

23. Ms. Starnes testified she voluntarily gave law enforcement consent to search the Jaguar; she was not forced to do so (Tr. at 48, 51-52). She did not have any complaints about how officers treated her grandchildren (Tr. at 51).

24. Defendant made payments on and insured the Jaguar (Tr. at 24-27, 43). He later traded in the Jaguar for a Mercedes and drove the Mercedes on a daily basis (Tr. at 25, 27).

25. Ms. Starnes testified Defendant drove the Jaguar on a daily basis, but let her use it when she asked (Tr. at 43). She sometimes drove when they went out together since Defendant's license was suspended (Tr. at 44). Ms. Starnes would generally use the car when she saw her grandchildren and on the weekend (Tr. at 43).

26. Ms. Starnes testified it was not unusual for Defendant to give her permission to use the Jaguar (Tr. at 49). When Defendant did so, he did not place restrictions on how Ms. Starnes could use the car or where in the car she could look (Tr. at 49-50). Ms. Starnes was under the impression that when she had the Jaguar, she could use it like she would her own car (Tr. at 50-51). When Defendant gave Ms. Starnes permission to use the Jaguar on September 2, 2008, she was permitted to look throughout the car (Tr. at 51).

27. Ms. Starnes testified she would ask Defendant's permission to use the car (Tr. at 55). She did not ask Defendant's permission to use the car after she arrived home from work on September 2, 2008 (Tr. at 55).

### III. LEGAL ANALYSIS

The Fourth Amendment prohibits unreasonable searches and seizures. Exceptions to this general prohibition exist, however. Two such exceptions include consent and probable cause. Each will be addressed in turn below.

**A.     Consent**

"The Fourth Amendment does not prohibit the warrantless search of premises when police obtain valid consent." United States v. Amratiel, 622 F.3d 914, 915 (8th Cir. 2010). Consent does not always have to be given by the defendant, but can also be given by a third party under the appropriate circumstances. United States v. Matlock, 415 U.S. 164 (1974); Amratiel, 622 F.3d at 915-16; United States v. Chavez Loya, 528 F.3d 546, (8th Cir. 2008). "Valid third party consent can arise either through the third party's actual authority or the third party's apparent authority." Chavez Loya, 528 F.3d at 554 (quoting United State v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007)). Actual authority, or common authority, is a question of fact and exists when there is mutual use and joint access or control. Amratiel, 622 F.3d at 915-916; Chavez Loya, 528 F.3d at 554; United States v. James, 353 F.3d 606, 613 (8th Cir. 2003)(internal citations omitted). By contrast, "[a]pparent authority exists when 'the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Amratiel, 622 F.3d at 916. See also Chavez Loya, 528 F.3d at 554.

In this case, the record supports a finding that Ms. Starnes had actual authority to consent to

a search of the Jaguar. Defendant let Ms. Starnes use the car when she needed it and it was not unusual for her to do so. Ms. Starnes sometimes even drove when she and Defendant were together. When Ms. Starnes used the car, she could use it as she wished without restriction. Ms. Starnes was using the Jaguar on September 2, 2008 and, accordingly, had possession of the sole set of keys.

Even if Ms. Starnes did not have actual authority to consent to the search of the Jaguar, the record aptly demonstrates she had apparent authority. Law enforcement observed Ms. Starnes drive the Jaguar into the parking lot of 910 Pennsylvania on September 2, 2008. She told Special Agent Ramana and Detective Butler that she was the primary driver of the car and that she had possession of the sole set of keys. Ms. Starnes went to the parking lot with officers and opened the car's door and trunk. Defendant's motion to suppress should thus be denied.

**B.      Voluntariness**

Defendant next maintains that the evidence obtained from the September 2, 2008 search of his Jaguar should be suppressed, arguing Ms. Starnes' consent "was not a product of her free will but rather a result of coercion." "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." United States v. White, 42 F.3d 457, 459 (8th Cir. 1994). Defendant's argument is misplaced, as Ms. Starnes testified at the suppression hearing that she voluntarily gave law enforcement consent to search the Jaguar and she was not forced to do so. Moreover, the record is completely devoid of any evidence that would indicate her consent was involuntarily given. Defendant's motion to suppress should be denied on this ground.

**C.      Automobile Exception**

Under the automobile exception to the Fourth Amendment, law enforcement officers may "search a vehicle without a warrant if they have probable cause to believe the vehicle contains

8

evidence of criminal activity." United States v. Claude X, 648 F.3d 599, 602 (8th Cir. 2011)(quoting United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011)). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Rodriguez, 414 F.3d 837, 843 (8th Cir. 2005)(citing United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000)). See also Claude X, 648 F.3d at 602.

Probable cause exists in this case as law enforcement knew that two of the individuals involved in the robbery of Bank Midwest wore dark-colored face coverings that had eye holes cut out. Law enforcement also found an abandoned Toyota Camry running in a parking lot one forth of a mile from the bank. The Camry was stolen and had stolen license plates. Defendant's car was observed speeding and swerving out of this same parking lot shortly after the robbery occurred. When Special Agent Ramana stood outside the Jaguar while it was parked at 910 Pennsylvania, she could see a dark-colored head covering on the floorboard. See United States v. Bynum, 508 F.3d 1134, 1137 (8th Cir. 2007)("Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle."). As a result, Defendant's motion to suppress should be denied.

## *IV. CONCLUSION*

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an

extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
October 3, 2011